May I reserve five minutes for rebuttal? But keep track of the time before you start. I got to ask you a question based upon your status report, which indicates that Stephen Turner has filed a bankruptcy, right? Yes. Chapter seven. Doesn't that mean that the trustee now owns this cause of action? The estate does. It's part of the estate. So Dr. Turner is no longer the real party in interest. Well, he's the real party and anything he won would have to go to the estate. That's and that's the reason. That's the reason the trustee or the estate is the real party in interest. Well, they should control this action and not him. Your Honor, let me tell you what we've done on that. We've been in discussions with the trustee. We've sent him all this stuff and we've asked them, in effect, to either allow us to do this or take it themselves. I think they have a power under the bankruptcy code to, you know, just say, forget it. We don't want it or whatever. They do. But don't you have to have their consent and their abandonment? They haven't done that yet. They just haven't done it and they haven't said yea or nay on it. They haven't done it and they own the cause of action. Well, they they And you can't prosecute it. Well, Your Honor, I think I can and it's provided that I have to give any victory over to them. That's my understanding of it. I don't think so. You're not the real party in interest. By the way, Your Honor, that issue applies only to Dr. Turner himself. Right. And not none of the other plaintiffs. So I just would like the Court to know I have been making requests to them to have permission to do it and they haven't said yea or nay on it. It just kind of sits right now. I think we can ask both you and your opponents. You know, you can file, say, say letter briefs, you know, within a week. All right. Setting forth whether or not Stephen Turner is still the real party in interest here as opposed to his bankruptcy state or trustee. Cite any cases you think you can support your position. And let us know of any action to the bankruptcy court has taken in terms of approving the abandonment of this cause of action or whatever it is. That you think allows you to prosecute this action. All right. And also, Your Honor, so we'll give you a week to do that. In the meantime, go and argue the case. All right. I just would like to say I'll also try to wrangle the trustee into making an agreement for it because that would solve it also. Right. All right.  I'll definitely take care of that. I'd like to start with the issue about the Federal Debt Collection Practices Act claim. And briefly, I'll just tell you that in this case, Susanna Turner has no kind of business toward judgment of any sort against her. And Stephen Turner does. It was a type of business toward kind of went by default, but he got stuck with it. It's over a million bucks. So that case is not like a credit obligation. We don't have any confusion about that. There's an underlying judgment, and that's that. But when they file a new matter against Susanna Turner for fraudulent conveyance, we're saying that case involves an agreement regarding the personal family home. The whole case is about an alleged fraudulent conveyance of their family residence. Mr. Frank, with respect to your argument that you'll now develop about the Federal Debt Collection Act, I see nothing in your brief about the Hawthorne case, which the district court quite obviously thought was highly pertinent and which was also addressed by your adversary. I don't know how you get around the Hawthorne case unless you're simply asking this Court to ignore what's said by a sister court of appeals. Your Honor, I don't think there's a case that specifically talks about a fraudulent conveyance case. My impression was that the law was very clear on this, that whatever debt you have needs to be in the line of a consumer debt, not a commercial debt or not a tort debt. And I don't really dispute that whole point. The question here is when you have a subsequent case, a second action, that is fraudulent conveyance and the conveyance in question is the family dwelling. In that circumstance, we're saying you do have that personal consumer nature of it literally by the statute's terms. So that was my direction on it. I don't mean to ignore Hawthorne, and I don't like to ever say that some appellate decision out there just should be disregarded, but we're just saying it still doesn't focus on a fraudulent conveyance theory. Mr. Frank, the point in Hawthorne, as I understood it, was the statute. The statute on which you rely talks about obligations arising out of a, quote, transaction. And the Hawthorne court there said the ordinary meaning of transaction implies some type of business dealings. When we speak of transactions, we refer to consensual or contractual arrangements, not damage obligations thrust upon one as a result of no more than her own negligence. Your Honor, the ---- Are they central to the issue here? And let me tell you the transaction. We do have a transaction. That's what I'm trying to tell you. Okay? The transaction is a contract between Dr. Turner and Susanna Turner by which he gave her 100 percent of whatever interest he had in their dwelling. So that's a transaction. We understand that. You've got to have a transaction. I don't have any confusion about that. And we're saying there is one. But, Mr. Counsel, it's not a consumer transaction. That's the problem. And here's what I would say. If you look at the statute, it's got to be consumer transaction, no doubt about it. That is one which is primarily for personal, family, or household purposes. I'm reading from the statute, 1692a5. Well, this was a transaction literally involving the personal house. So don't we fit in it? It did involve it, but it wasn't. I don't know what's happening here. You can turn it off. Can you turn it off? I can hear you fine. Can you just turn it off? Do you know how to turn that off? Or just pull the plug and disconnect it. I think the statute did not contemplate this type of transaction. It contemplated purchase of a TV set or groceries for the kitchen, not a fraudulent conveyance from a husband to the wife of the house that they already own. I don't know. The facts don't show whether this was a community property or not. It was a what? Community property. Oh, it was a house bought during marriage. It would have totally been community property until he did what's called a transmutation agreement and gave his interest to his wife. So it was totally community property, and then he divested himself of his community property interest. And I'd like to point out, he did that in 1992, way before that tort claim came up. Anyway, I just want to assure you all that we don't deny the transaction requirement, that it's got to be a personal thing. I don't have any doubt about it. I would like to say there is no case out there that says a fraudulent conveyance of a family residence does not come within it. There just isn't one. I also point out the Bass case, which talked about a dishonored check. It says as long as a transaction creates an obligation to pay, a debt is created. And that seems to be the test. And here, if they lose that fraudulent conveyance action, they've got to pay over the whole house. And that's like the core family dwelling. I would also like to point out that I always understood it that these statutes are remedial. They're to be given broad and expansive treatment. I think there's cases that talk about that. Bass is one to get to a check, because a bad check wasn't put in the statute either, and they kind of expanded it. And I think part of this is a question of do you want to expand it to include a fraudulent conveyance, or do you want to restrict it so that it's not? But we think we are literally on all fours with the statutes, even if it may not have been intended by Congress. Congress didn't say no or yes to this. They may just not have thought about it. I don't know. But anyway, that's our main point on that. You know, I don't really dispute the issues that you point out, you know, that it's got to be a transaction. It's got to be personal. We don't really take issue with that. We say there is a transaction. It was personal. Mr. Frank, you only have about a minute left. You're on reserve for rebuttal, or are you going to give up? Let me just say on the RICO case right away, I'm going to use it. Take your time. You're not going to get rebuttal. I'll just use it right now. I just have a Ninth Circuit case, Cal Arc Architectural Building. It says they don't have to have multiple victims. The district court was following other Ninth Circuit precedent that says you do. I cited 11th Circuit precedent, other circuit precedents that say one victim is enough. That's not your real problem, is it? Well, I think that the problem is one of continuity. Well, that's the question. They're saying if you don't have more than one victim, you don't have continuity. And we're saying you do. And here you do have continuity because you have all kinds of stuff going on. We have to prove non-sporadic activity. That's what we're saying. And this was definitely all they were doing all kinds of stuff very methodically, very continuously. In fact, I'm sure it would have continued were it not for Mr. Cook being removed. So we think we do have continuity. It would have gone on forever until they removed him, I'm sure. So we think we do qualify on that. Anyway, I only have 12 seconds left. I just like to say on the standing issue that if you're a specific target of a RICO offense, that you do have standing. And I cited some cases about that. So a shareholder can have standing. I got zero. Sorry. Thank you. Thank you, Mr. Plain. Good morning, Your Honors. May it please the Court. My name is Timothy Carl Ayers, Associate Counsel to David J. Cook and Cook, Cook, and Liu. It humbles me to be here this morning. This is the first time I've ever had the pleasure of appearing in court. When I was a little kid, my mother used to say to me, Timothy, you can't make a federal case out of this. That's the problem here. The real issue here, I want to focus on the public policy aspect. The real problem we have here is we have garden variety collection activity going on, and suddenly the response from the judgment debtor who is faced with what is no doubt vigorous enforcement effort designed and intended to get a judgment paid because we have to accept the facts as they're alleged as true, whether or not they're true. So we start with that premise. But it is still garden variety judgment enforcement activity. And the California State Supreme Court has spoke on this issue, and it is said in Silberg that abuse of process is very limited if not extinct in that context because the underlying conduct is privileged. And so this ---- What about addressing Mr. Frank's point that this is a consumer transaction? I was ---- All it involves is the conveyance of a, you know, a home between husband and wife. Why isn't that a consumer transaction? Your Honor, the FDCPA is very clear on what constitutes a consumer transaction. It is a transaction between a creditor and a debtor that is concerned with consumer household or personal goods. Here what we have is the underlying debt, which is a tort judgment, business tort judgment. That's the underlying debt. If what we're going to do under FDCPA is decide whether or not FDCPA is implicated based upon the nature of the property that I seek to levy upon, it becomes a nightmare. If I levy on wages because it's an underlying non-consumer debt, but it's a DBA, do I then have to comply with the validation and verification requirements under FDCPA? How does the practitioner or the collection agency, which legitimately is trying to comply with FDCPA, who knows when the claim comes in that it's not a consumer debt, then how do they implement the process of collecting the debt? In practicality, when these claims come into the collection law firm, we identify the claim, consumer, non-consumer. And you have to comply with FDCPA on the consumer claims with those requirements of the Act, validation, verification. I'm not suggesting that in a commercial context that their abusive conduct is somehow allowed, but the question takes me back to my initial point, and that's a question of the limits on Federal the role of the Federal courts in these types of proceedings. And here what this particular plaintiff is trying to do is use a Federal court to thwart the efforts of a judgment creditor to collect. And that's all that's going on here, and that's evidenced by their own briefs, because what they show in their briefs is that Cook was driven out as the judgment creditor's lawyer, primarily because of this lawsuit, because it inherently creates a conflict of interest between the collection lawyer and their client. And so what happens is, if this Court publishes an opinion that says RICO is now implicated and FDCPA is now implicated in this context, then what happens is we have a floodgate of litigation from judgment debtors who seek not to validate rights, but simply to thwart the process, because what they have to do only is do what happens so many times, and that's go down to the clerk's office, file a pleading. And that's why the trial judge was right in this case, because she looked at the facts and determined two problems with this case on Federal-questioned jurisdiction. FDCPA doesn't apply because it's not an underlying consumer obligation. Mr. Hatch, you're representing all of the activities, or just Mr. Cook? Mr. Cook and his law firm are the only active defendants, because service of process was never affected on Yao and Martini, who are the underlying judgment creditors. That's the actual status of the case. But it would apply to all of them, because the only reason the judgment creditors are named here is because the law firm is collecting the debt for them. So the ---- You're saying that Yao and Martini are not parties to this appeal? No. They never filed a response to pleading in the State court, because they were never served with process. I'm sorry, in the trial court, district court. My point is this. We have to focus on the Federal-questioned aspect of this, because that's ultimately what takes us out of State court, where the California Supreme Court has determined what is the proper protocol for resolving issues like this. And so when we look at this in that context, we know FDCPA doesn't apply. Nature of the debt, not nature of the property levied upon. RICO doesn't apply, because the underlying predicate acts are not wrongful. And I suggest to you that when the trial judge determined that the default judgment against WPS was outcome determinative and res judicata as to the dispute, that was proper, because that's the context that the debtor or those people who surround the debtor and essentially serve as fraudulent transferees or co-conspirators to a fraudulent transfer, that's how you get those types of claims adjudicated, is in a State court proceeding. So all Mr. Cook did was get a court order, serve a court order. Somebody responded to that court order by interpleading funds. It was litigated, because we know under In re Bonnie Moore that that default judgment is res judicata. And so it was litigated as between WPS and the judgment creditor. And that wipes out the whole underlying RICO claim, because there's no underlying predicate act that's wrongful. Everything that Cook did was procedurally proper. He simply served a copy of the order with a letter. And ultimately, the interpleader claim adjudicates the rights, because remember, the only party here that conceivably suffered any kind of cognizable harm is WPS, because presumably it's suggesting that somehow its economic rights were interfered with. But in fact, they admit in their own briefs that WPS didn't defend, allegedly, because it got paid. So I don't see where the harm is. And so you don't really get to continuity until you get past whether or not the underlying acts were privileged. And they are under Silberg. And so if we're going to talk about continuity, then we're going to talk about religious technology and the fact that what Cook's whole purpose here is the enforcement of a singular judgment. There's no suggestion here that every single judgment debtor that this law firm comes into contact with is somehow subjected to the kind of conduct that is alleged in this complaint, which is demonstrative of my suggestion that what we have here is the last-ditch effort of a bankrupt debtor who has fraudulently transferred their property to avoid the payment of a just debt by eliminating the only person that might possibly have helped the judgment creditor save the substituted lawyer. And that was Mr. Cook, who was fighting to recover on a million-dollar judgment. So with that, I'll leave it in your hands. And with this thought, there is a limit to the role of the federal courts in matters of state court judgment enforcement. And if we allow judgment debtors to invoke RICO and FDCPA in a context beyond consumer transactions, the district court will be flooded with litigation. And we can't allow that to happen because the state court properly handles those matters. And I'll leave it with you on that note. Thank you. All right. Thank you. We thank both counsel. This case is submitted for decision. Next case on the argument calendar is Chandler v. Phan. Thank you.
judges: B Fletcher, Tashima, Pollak